United States District Court
Southern District of Texas
**ENTERED**
August 30, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELLY ELAINE SLAYTON, | § | |
| SPN # 03078865, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-4431 |
| | § | |
| RYAN NGUYEN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Elaine Slayton, a pretrial detainee in the Harris County Jail, proceeds *pro se* and *in forma pauperis* in this civil rights suit. Slayton alleges that the defendants, Officer Ryan Nguyen and Harris County, violated her civil rights during her detention at the jail. The defendants moved for summary judgment (Dkt. 49), and Slayton has responded (Dkt. 57; Dkt. 58; Dkt. 61). Slayton also has filed motions for appointed counsel (Dkt. 59) and an investigator (Dkt. 53; Dkt. 65), among others. Having considered the pleadings, the motion and briefing, the applicable authorities, and all matters of record, the Court determines that summary judgment should be **denied.** Slayton's motion for appointed counsel will be **granted** and her other motions will be **denied**. The Court will **stay** and **administratively close** this case while it locates *pro bono* counsel to represent Slayton. The Court's reasons are explained below.

**I.     BACKGROUND**

Slayton is detained in the Harris County Jail on murder charges and states that the

judge in her criminal proceedings ordered her to receive a competency evaluation at a state hospital (Dkt. 13; Dkt. 18, at 5). Harris County's publicly available online records indicate that, on June 11, 2024, the state court granted Slayton's defense attorney's motion for an examination of her competency and sanity. *See* Record Search, Harris County District Clerk, available at https://www.hcdistrictclerk.com/Edocs/Public/search.aspx (last visited Aug. 26, 2024).

In this lawsuit, Slayton brings claims against two defendants: Officer Ryan Nguyen and Harris County (Dkt. 1 (complaint); Dkt. 18 (more definite statement)).[1] The Court construed her claims as sexual harassment, unconstitutional conditions of confinement, and failure to protect (Dkt. 26). Slayton alleges that, in 2021 and 2022, during her detention in the jail, Officer Ryan Nguyen sexually harassed her, made sexual advances and sexual comments, gave her contraband for sexual acts, and made threats of physical harm (Dkt. 1, at 3-4; Dkt. 18, at 6). She also claims that, for example, Nguyen gave her his personal social media account; provided her with a disposable glove sprayed with cologne and suggested sexually inappropriate acts; knocked on her window; and flashed a light on her while she used the latrine (*id*. at 13).

Slayton alleges mental and emotional harm and fear of physical abuse (*id*. at 8). She further states that she was "jumped in [her] sleep" on June 10, 2022, and that Nguyen was on duty at the time but that she doesn't know "if Nguyen was behind the motive" for the

---

[1] Although Slayton initially brought claims against District Attorney Kim Ogg and the Texas Jail Commission on Standards (Dkt. 1), the Court dismissed all claims against these defendants in its order to answer (Dkt. 26).

incident (*id*. at 9). She states that the jumping "nearly took [her] life" and that she did not receive medical treatment until June 22, 2022 (*id*.).[2]

Slayton filed grievances against Nguyen that resulted in investigations under the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq*. (PREA). She states that Nguyen admitted during a PREA investigation to giving her contraband for sexual acts and giving her his personal social media account (Dkt. 18, at 13). She also alleges that jail officials improperly "unfounded" her grievances against Nguyen, called her a liar, or "unsubstantiated" her grievances without investigating them (*id*. at 21).

Slayton claims that Harris County is liable for the violation of her rights because jail officials failed to act on her complaints regarding extended sexual harassment and abuse from Nguyen and others, including rape and sexual touching, "waking up to having [her] pants pulled down," and being "jumped" six times, and that officials mocked her when she complained (Dkt. 1, at 3-4; Dkt. 18, at 22-25).[3] She further claims that Harris County had a custom of failing to timely or adequately address her grievances and complaints regarding "valid, continuing, unrelieved, life threatening" health and safety

---

[2]     Some of Slayton's allegations in this lawsuit appear to overlap with her allegations in *Slayton v. Lawrence*, Civil Action No. 22-2572 (S.D. Tex.), and other suits she has filed. *See Slayton v. Harris County Jail*, Civil Action No. 4:21-2553 (S.D. Tex.); *Slayton v. Spells*, Civil Action No. 4:23-0363 (S.D. Tex.); *Slayton v. Harris County*, Civil Action No. 4:24-0193 (S.D. Tex.).

[3]     *See id*. at 22-23 (alleging continuous sexual violations, including witnessing rape, "waking up to having my pants pulled down," being sexually touched and raped, and other violations); *id*. at 24-25 (alleging that she was jumped six times by two or more people who would strike her, snatch her by her hair or arm, strike her, kick her, and punch her); *id*. at 27 (stating that incidents at the jail caused her injuries including blunt head trauma, concussions, welts, cuts, bruising, mental anguish, migraines, and post-traumatic stress disorder (PTSD)).

concerns (*id*. at 19) and that jail officials render the grievance system ineffective because they failed to investigate, lied about, ignore, delayed, or threw away her grievances.[4] She states that the jail officials "unfound" grievances "due to lack of camera footage and blind spots"; that she has filed "over 2,690 requests and grievances" despite the "broken system"; that jail officials "picked and chose which [grievances] to pursue to their benefit"; and that officials wrote false reports (Dkt. 57, at 1-2). She alleges that jail officials do not follow the jail's procedures with regard to hearings, grievance boxes, or witness statements (*id*. at 6).

Slayton additionally claims that numerous Harris County officials, whom she identifies by their names, retaliated against her for filing grievances and disregarded her reports of sexual misconduct (Dkt. 18, at 30-62)

The defendants deny that Nguyen made sexually inappropriate remarks to Slayton, exhibited sexually inappropriate conduct in her presence, demonstrated favoritism towards her, harassed her, or flirted with her (Dkt. 49, at 6). Nguyen admits that he gave Slayton disposable gloves, on which he had sprayed cologne, but states that he did so only to assist her in cleaning her cell. He submits an affidavit averring that he did not provide Slayton with the gloves for sexual gratification:

---

[4] *See id*. (stating that complaints "don't resolve on their own just because they weren't acknowledged or 'unfounded/unresolved'"); *id*. at 20 (alleging that officials delayed their response to her grievances and then told her "'well, there's nothing I can do now as I just got this months after you wrote it'"); *id*. (alleging that delay defeats the purpose of a grievance system); *id*. at 21 (alleging that she was "trapped in jail with no outlet from abuse other than grieving" and that she "almost went manic suicidal if it weren't for PREA actually intervening and doing their jobs"); *id*. (alleging that officials failed to investigate her grievances and called her a liar); *id*. at 29 (alleging that grievance kiosks were sometimes unavailable and that officials threw grievances away).

> I deny that I flirted with or sexually harassed Inmate Slayton, showed favoritism to her or in any way threatened her or solicited any sexual act from her. I deny that I addressed her as "baby," and further deny I suggested she appear naked. I never exposed myself to her. I did provide her a pair of disposable gloves when she complained that her cell was unclean and had a bad smell. At that time, there were no cleaning supplies available at the jail. I sprayed cologne on the gloves to address the cell odor she complain[ed] about. I did not provide her the gloves for any other reason.
>
> I never violated the constitutional rights of Kelly Slayton. A reasonable detention officer would have conducted himself with respect to Kelly Slayton, just as I did. I do not harbor any malice against Kelly Slayton.

(Dkt. 49-5, at 1-2). As for Harris County, the defendants assert, "Plaintiff's allegations against Harris County are baseless and unsupported by any admissible evidence" (Dkt. 49, at 7).

The defendants present 102 pages of Slayton's grievance records (Dkt. 49-6), as well as Harris County Jail's grievance policy (Dkt. 49-7) and inmate handbook (Dkt. 49-11).[5] The policy lists three potential resolutions for an inmate grievance: unfounded; founded/resolved; and founded/unresolved (Dkt. 49-7, at 4). The defendants state that Slayton filed multiple "general grievances," which were deemed "unfounded," and that Slayton did not appeal (Dkt. 49, at 7, 12). As support, they present the affidavit of Chris Lee, a detention sergeant, who lists eight grievances by number and avers that Slayton failed to appeal the "unfounded" findings for all listed grievances (Dkt. 49-4, at 1-2). Lee provides no information regarding the facts underlying each grievance or the relevance to

---

[5] The jail's grievance policy states that grievances shall be handled in a timely manner; that staff shall not subject any inmate to harassment or unauthorized punishment due to a grievance; that staff may not interfere with or delay grievances; and that "PREA-related grievances" shall be forwarded to the PREA Office for investigation (Dkt. 49-7, at 2-3).

Slayton's claims in this suit, and the defendants' motion does not cite to specific pages in the grievance records.

The defendants also state that Slayton filed "several PREA-related Grievances" and that two related investigations were conducted (Dkt. 49, at 7) (citing generally to Dkt. 49-6)). They present an affidavit from Ketrick V. McCutcheon, a PREA investigator at the jail, who lists grievance numbers for five PREA grievances, stating that three were deemed "unfounded" and two were deemed "unsubstantiated" (Dkt. 49-3). The affidavit does not explain the difference between the two categories and provides no information regarding the facts underlying the listed grievances or their relevance to Slayton's claims in this suit. The defendants' motion asserts that "only Slayton's PREA allegations against Nguyen (Grievance No. 47756) was found substantiated and referred to Command Staff for further investigation," and that the investigation was still pending at the time of their motion on February 5, 2024, more than a year after the alleged incident in November 2022 (Dkt. 49, at 7; *see* Dkt. 49-3, at 2).

As relief for her claims, Slayton seeks pretrial release to a rehabilitation center and $2.2 million in damages (Dkt. 1, at 4; Dkt. 18, at 82, 85).

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment—Rule 56

The defendant has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

B. **Qualified Immunity**

The defendant has invoked qualified immunity, and the plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (cleaned up); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

On summary judgment, the plaintiff has the burden to point out clearly established law regarding the right in question and to raise a fact issue as to the violation of that right. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Amador v. Vasquez*, 961 F.3d 721, 726-27 (5th Cir. 2020); *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016). A court must properly credit the plaintiff's evidence. *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). "To negate a defense of qualified immunity and avoid summary

judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654 (cleaned up).

### C. *Pro Se* Filings

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to

construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III. ANALYSIS

The Court's order to answer construed Slayton's claims as sexual harassment, unconstitutional conditions of confinement, and failure to protect. Slayton brings her claims under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt*, 822 F.3d at 180; *see also* 42 U.S.C. § 1997e(e) (limitation on recovery). The constitutional rights of a pretrial detainee such as Slayton flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).[6]

The defendants seek summary judgment based on exhaustion of administrative remedies, qualified immunity, and the merits of Slayton's claims. Slayton responded and opposes summary judgment.

### A. Exhaustion of Administrative Remedies

The defendants seek summary judgment on exhaustion grounds and bear the burden of proof on the issue. *See Dillon*, 596 F.3d at 266. Under the PLRA, inmates bringing an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 578

---

[6] PREA does not establish a private case of action. *See Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015).

U.S. 632 (2016); *Jones v. Bock*, 549 U.S. 199 (2007). A prisoner must exhaust before filing a federal complaint, and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The TDCJ has a two-step formal grievance process, and an inmate must pursue a grievance through both steps for the claim to be considered exhausted. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

The exhaustion requirement is mandatory and strictly enforced. *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 789-90 (5th Cir. 2012), *as corrected* (Feb. 20, 2013); *Dillon*, 596 F.3d at 268. The PLRA does not allow a district court to make a "special circumstances" exception to the exhaustion provision to permit prisoners "to pursue litigation even when they have failed to exhaust available administrative remedies." *Ross*, 578 U.S. at 635; *see Gonzalez*, 702 F.3d at 788 ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint"). Rather, the only exception is "that statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 578 U.S. at 635-36.

As the Fifth Circuit has explained, *Ross* set out several instances in which administrative remedies may be deemed "unavailable":

> An administrative remedy may be unavailable if (1) despite what regulations or materials may promise, prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2) "an administrative

scheme [is] so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Brantner v. Freestone Cty. Sheriffs Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross*, 578 U.S. at 643-44); *see Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (stating that grievance procedures are *"*unavailable" to an inmate if the correctional facility's staff misleads an inmate "so as to cause the inmate to fail to exhaust such process"). However, an inmate's "ignorance of the grievance procedures, without more, is no basis to deem them unavailable." *Id*.

The defendants do not argue that Slayton's claims related to PREA-related Grievance No. 47756, which she filed against Nguyen and pertains to her claims in this case, are subject to dismissal on exhaustion grounds (Dkt. 49, at 12). They also do not argue that Slayton's claims are subject to dismissal on exhaustion grounds regarding other PREA-related grievances (*id*.).

Regarding Slayton's many general grievances, the defendants make a cursory argument:

> As shown by the Affidavit of Chris Lee, and the documentation on each *general* Grievance[,] Plaintiff did not appeal any of the listed Grievances. Thus, Plaintiff failed to exhaust her administrative remedies as to the *general* Grievances which were unfounded.

(Dkt. 49, at 12 (emphasis original); *see* Dkt. 49-4 (Lee Affidavit); Dkt. 49-11, at 8-9 (procedures for filing and appealing grievances)). Their motion makes no additional argument in support of summary judgment on exhaustion grounds. Neither the motion nor the Lee Affidavit cites to specific pages of the grievance records or identifies particular

grievances relevant to Slayton's claims in this suit.

Slayton opposes summary judgment on exhaustion grounds and alleges that she "did in fact exhaust all grievance procedures" in the jail's inmate handbook (Dkt. 57, at 6; *see* Dkt. 1, at 3). Additionally, she alleges that jail officials delayed their responses to her grievances, failed to investigate them, wrote false reports, failed to follow the jail's grievance procedures, and threw grievances away. Her allegations in her complaint and more definite statement, both of which are sworn under penalty of perjury, are competent summary-judgment evidence.

As stated above, the defendants bear the burden of proof on exhaustion, which is an affirmative defense. *Dillon*, 596 F.3d at 266. They also bear the burden under Rule 56 to demonstrate the absence of a genuine issue of material fact regarding exhaustion. However, their motion fails to cite to any specific evidence in the record, and their supporting affidavits do not demonstrate that the cited grievances are related to Slayton's claims in this suit. *See Malacala*, 353 F.3d at 405. Additionally, the motion does not engage Slayton's arguments about the availability of grievance procedures at the jail. Therefore, summary judgment on exhaustion grounds will be denied.

### B. Claims against Nguyen

Nguyen seeks summary judgment based on qualified immunity. The Court must decide (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right; and (2) whether Nguyen's conduct was objectively reasonable in light of clearly established law. *See Carroll*, 800 F.3d at 169.

The defendants first argue that summary judgment is appropriate because Slayton's allegations against Nguyen "do not arise to a constitutional violation" (Dkt. 49, at 12) (citing *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997)). *Boddie* held that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861. The defendants also cite several Fifth Circuit opinions determining that, for example, a plaintiff's *de minimis* physical or psychological injuries were insufficient to state a claim for a constitutional violation, *see Copeland v. Naan*, 250 F.3d 743 (5th Cir. 2001); that "isolated, unwanted touchings" by prison officials do not state a constitutional claim, *see Pryer v. Walker*, 385 F. App'x 417, 418 (5th Cir. 2010); and that an allegation of sexual touch during a routine pat-down was not sufficiently serious to show a constitutional violation, *see Allen v. Johnson*, 66 F. App'x 525 (5th Cir. 2003). However, their motion fails to discuss any of Slayton's allegations against Nguyen in the context of the authority they cite and, moreover, does not cite Fourteenth Amendment cases. *See*, *e.g.*, *Tyson v. Sabine*, 42 F.4th 508, 517-18 (5th Cir. 2022) ("sexual abuse by a state official cannot be justified by any legitimate governmental objective" and "[p]hysical force is not a requirement of a violation of the right to bodily integrity"); *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986) ("[t]he Due Process Clause of the Fourteenth Amendment accords state pretrial detainees rights not available to convicted inmates"); *Simpson v. Cisneros*, No. 6:20-CV-00716-ADA-JCM, 2023 WL 6131645, at *4 (W.D. Tex. Sept. 1, 2023), *report and recommendation adopted,* No. W-20-CV-00716-ADA, 2023 WL 6134776 (W.D. Tex. Sept. 19, 2023) (applying *Tyson*). Genuine issues of material fact

remain as to whether Nguyen violated Slayton's constitutional rights.

The defendants also argue that alleged verbal offenses are insufficient to state a claim against Nguyen (Dkt. 49, at 14).  This argument does not fully engage Slayton's allegations, which include not only that Nguyen made sexual comments, but also that he sexually harassed her, made sexual advances, gave her contraband for sexual acts, and threatened physical injury.

Finally, the defendants argue that summary judgment should be granted because Slayton's general grievances were determined to be unfounded (*id*. at 14-15).  As discussed above in the context of exhaustion, the defendants' motion lacks specific citations to the record and does not explain how the grievances they reference are relevant to the claims in this suit.  Given Slayton's specific factual allegations against Nguyen, the defendants' conclusory statements cannot demonstrate the absence of a genuine issue of material fact. In any event, as the defendants acknowledge, Slayton's "PREA grievance" against Nguyen was substantiated. This argument therefore is insufficient to warrant summary judgment.

Nguyen's motion for summary judgment on qualified immunity grounds will be denied.

### C. Claims against Harris County

Harris County moves for summary judgment on Slayton's Fourteenth Amendment claims.  The county may be liable for the violation of civil rights if Slayton shows "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023)

(cleaned up) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)); *see Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 509-512 (5th Cir. 2022).

When the violation of a pretrial detainee's rights is attributed to a municipality, the cause of the violation can be categorized either as (1) a condition of confinement or (2) an episodic act or omission. *Garza*, 922 F.3d at 632; *see Wagner v. Harris Cty.*, No. 4:23-CV-02886, 2024 WL 2836332, at *8-*9 (S.D. Tex. June 4, 2024). A conditions-of-confinement claim is an attack "on general conditions, practices, rules, or restrictions of pretrial confinement," and may involve a rule, restriction, practice, act, or omission that is "sufficiently extended or pervasive." *Garza*, 922 F.3d at 632.[7] Courts inquire whether the condition "amount[s] to punishment of the detainee," is "reasonably related to a legitimate governmental objective," and caused the constitutional deprivation. *See Garza*, 922 F.3d at 632-33 (cleaned up) (citing, *inter alia*, *Bell v. Wolfish*, 441 U.S. 520 (1979)); *Estate of Bonilla by and through Bonilla v. Orange Cty., Tex.*, 982 F.3d 298, 308-09 (5th Cir. 2020). An episodic-act-or-omission claim complains of harm from "a particular act or omission of one or more officials, and an actor usually is interposed between the detainee and the municipality." *Garza*, 922 F.3d at 632 (cleaned up). For these claims, the inquiry is (1) whether a municipal employee violated the plaintiff's clearly established constitutional rights with subjective deliberative indifference; and (2) whether the violation resulted from

---

[7] Conditions-of-confinement claims pertain to "durable restraints or impositions on inmates' lives" such as overcrowding, deprivation of privileges, the use of disciplinary segregation, excessive heat, inadequate medical treatment or processes, and policies regarding medications. *Id.* at 633-34; *Scott v. Moore*, 114 F.3d 51, 53 & n.2 (5th Cir. 1997); *Campos v. Webb County, Tex.*, 597 F. App'x 787, 791 (5th Cir. 2015).

a municipal policy or custom adopted and maintained with objective deliberate indifference. *Id.* at 634.

The defendants argue that Slayton's conditions-of-confinement claim fails, citing cases regarding officials' failure to satisfactorily process grievances or to follow jail policy (Dkt. 49, at 16-17). To be sure, Fifth Circuit authority holds that inmates do not have a federally protected liberty interest in having grievances resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014). Moreover, as noted by the defendants, the "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of the Eighth or Fourteenth Amendment, *if constitutional minima are nevertheless met*." *Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) (cleaned up) (emphasis added). However, Slayton alleges that jail officials repeatedly ignored or delayed processing of her grievances by, for example, allowing the grievances to "time out," denying them without investigation, falsifying statements, or throwing them away, in effect defeating the purpose of a grievance system. She also alleges more generally that jail officials failed to act on her numerous complaints and requests for help regarding harassment and abuse from Nguyen and others. Because the defendants' motion does not fully engage this claim against Harris County, they are not entitled to summary judgment on this record.

Regarding an episodic-acts-or-omissions claim, the defendants cite authority regarding the deliberate-indifference standard (Dkt. 49, at 17-18). After reciting the legal standards, however, the defendants present no argument as to why, given Slayton's specific

17 / 20

allegations regarding Nguyen's conduct and jail officials' failure to address it, summary judgment should be granted in their favor. As stated above, Slayton has alleged that Nguyen repeatedly harassed her; that her grievances and other complaints were delayed, ignored, or improperly denied; and that jail officials mocked her complaints. The defendants have not met their burden to demonstrate the absence of a fact question on this claim. *See* FED. R. CIV. P. 56(a); *Garza*, 922 F.3d at 634.

The defendants also argue that a failure-to-protect claim requires more than a showing of negligence (Dkt. 49, at 17). However, as above, they do not argue that Slayton's specific allegations fail to satisfy the deliberate-indifference standard and thus fail to meet their summary-judgment burden.

Taking all facts in the light most favorable to Slayton, the defendants' motion for summary judgment on Slayton's claims against Harris County will be denied.

### D.     Other Pending Motions

Slayton has requested appointed counsel (Dkt. 59). A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel. *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). When deciding whether to appoint counsel, the court considers the type and complexity of the case, whether the indigent litigant can adequately investigate and present his case, and the level of skill required to present the evidence. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).

At this stage in the case, the Court finds that trained counsel would assure proper presentation of Slayton's claims at trial. The Court therefore will stay and administratively close this case while it locates volunteer counsel. Slayton's motions for an appointed investigator (Dkt. 53; Dkt. 65) will be denied at this time without prejudice to consideration of a future motion from appointed counsel, if warranted.

The Court does not address, and did not order the defendants to answer, Slayton's multiple allegations that specific officials at the Harris County Jail retaliated against her for filing grievances (Dkt. 18, at 30-62). The record is unclear as to whether the alleged episodes of retaliation are related to Slayton's claims in this lawsuit. Appointed counsel may, if warranted, move to amend or supplement the pleadings to bring a retaliation claim.

Slayton's motions for default judgment (Dkt. 69; Dkt. 71; Dkt. 74) will be denied. The defendants have not failed to plead or defend in this case, and Slayton demonstrates no basis for relief under Federal Rule of Civil Procedure 55.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 49) is **DENIED**.

2. The plaintiff's motion for appointed counsel (Dkt. 59) is **GRANTED**.

3. The plaintiff's motion for an appointed investigator (Dkt. 53; Dkt. 65) are **DENIED without prejudice** to consideration of a future motion from appointed counsel, if appropriate.

4. The plaintiff's motion for a jury trial (Dkt. 58) is **GRANTED in part** to the extent that the defendants' motion for summary judgment is denied.

5. The plaintiff's motions for default judgment (Dkt. 69; Dkt. 71; Dkt. 74) are **DENIED**.

6. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** while the Court locates *pro bono* counsel to represent Slayton.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on August 29, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE